UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES KAHN and RICK WELSH, individually and on behalf of all others similarly situated,**<br>Plaintiffs,<br>v.<br>**THE VANGUARD GROUP, INC.,**<br>Defendant. | Civil Action No. ____________<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs James Kahn and Rick Welsh, individually and on behalf of all others similarly situated ("Plaintiffs"), bring this Class Action Complaint against Defendant The Vanguard Group, Inc. ("Vanguard" or "Defendant"). Plaintiffs allege the following upon personal knowledge as to Plaintiffs and Plaintiffs' own acts and experiences and, as to all other matters, upon information and belief, including the investigation conducted by Plaintiffs' counsel, Vanguard's own public statements and regulatory filings, and published reports. Plaintiffs anticipate that discovery will yield substantial additional evidentiary support for the allegations below.

## NATURE OF THE ACTION

1. Vanguard is one of the largest investment management companies in the world. It reports that it is trusted by more than 50 million investors and that it manages approximately $12 trillion in assets.[1] Investors hold Vanguard accounts directly, through financial intermediaries, and through employer-sponsored retirement plans for which Vanguard provides participant recordkeeping and plan administration services.[2]

---

[1] *Get the facts: Vanguard's role as a passive investment manager*, VANGUARD (Feb. 2026), https://corporate.vanguard.com/content/corporatesite/us/en/corp/articles/get-the-facts-feb-2026.html; Vanguard Asset Mgmt., Ltd., *What makes Vanguard different?* (2026), https://www.ch.vanguard/content/dam/intl/europe/documents/en/what-makes-us-different-eu-en.pdf.

[2] *Management team and board of directors*, VANGUARD, https://corporate.vanguard.com/content/corporatesite/us/en/corp/who-we-are/sets-us-apart/our-management-team.html (last visited Nov. 10, 2026); *Vanguard Retirement Plan Participant privacy policy*, VANGUARD,

2. To open and service those accounts, Vanguard collects and maintains some of the most sensitive information a person has: Social Security numbers, income, assets, account transactions, and transaction history, along with the names, addresses, telephone numbers, and email addresses Vanguard uses to identify its clients and verify their identities ("Private Information").[3] That information is the key to a person's financial life—and, at Vanguard, to the retirement savings that took that person decades to build.

3. Vanguard understood this. It tells investors that, "[t]o protect your personal information from unauthorized access and use, we use security measures that comply with federal law."[4] Investors—including the many retirement plan participants who never chose Vanguard at all but were placed with Vanguard by their employers—had no ability to evaluate or control those measures. They could only trust that Vanguard would honor its promise.

4. Vanguard did not.

5. This class action arises from Vanguard's failure to protect that information. On or about November 4, 2026, Vanguard reported to the Office of the Vermont Attorney General a data security incident in which Social Security numbers were compromised (together with the related compromise of Vanguard client data described below, the "Data Breach").[5] Vanguard's filing identifies 94 affected Vermont residents—a count limited to a single, small State. Vanguard has since also disclosed that 1,656 South Carolina residents and 1,224 Massachusetts residents were

---

https://ownyourfuture.vanguard.com/content/en/main/vanguard-participant-privacy-policy.html (last visited Nov. 10, 2026) ("Participant Privacy Policy").

[3] *Personal investor privacy notice*, VANGUARD, https://investor.vanguard.com/privacy-center/personal-investor-privacy-notice (last visited Nov. 10, 2026) ("Privacy Notice").

[4] *Id.*

[5] *Vanguard Group data breach exposes Social Security numbers in Vermont*, BEINSURE (Nov. 2026), https://beinsure.com/news/vanguard-group-data-breach-exposes-social-security-numbers-in-vermont/; Security Breach Notices, Office of the Vermont Attorney General, https://ago.vermont.gov/categories/security-breach-notices (listing Vanguard).

impacted, and filed notice with the California state Attorney General. Vanguard has not disclosed how many people were affected nationwide.[6]

6. Vanguard's Vermont filing—its first report to a state attorney general—came nearly three weeks after a threat actor publicly advertised on an underground cybercrime forum a database, purportedly taken from investor.vanguard.com—the website through which Vanguard's individual investors access their accounts—containing more than 14 million records.[7] Sample data posted with the listing consisted of timestamped logs of one-time verification codes Vanguard sent to its clients by text message, together with each recipient's phone number, country, and mobile carrier; the sample timestamps run from June 2026 to August 2026.[8]

7. The notice to state attorneys general also came three months after the Data Breach initially occurred. Vanguard's notice reads:

> Vanguard experienced a social engineering incident between **July 29-31, 2026**. Social engineering campaigns work when an imposter targets an employee, posing as a legitimate contact, and deceives the employee into providing access to their corporate accounts.
>
> In this case, the incident resulted in a third party gaining unauthorized access to certain files within a limited set of cloud-based applications, like Microsoft 365. Some of those files contained personal information associated with certain Vanguard clients. No client accounts were accessed.[9]

8. Upon information and belief, the information compromised in the Data Breach includes Private Information such as customers' names and Social Security numbers, and also includes, or permitted access to, other identifying and account information Vanguard maintained,

---

[6] Beinsure, *supra* note 5.
[7] ThreatMon (@MonThreat), X (Oct. 16, 2026, 3:41 PM), https://x.com/MonThreat/status/2111120347026125224 ("ThreatMon Post").
[8] *Id.*
[9] https://www.mass.gov/doc/2026-1988-vanguard-group-inc/download (emphasis added).

including telephone numbers, mobile carrier information, records of the authentication codes Vanguard sent to clients, contact information, and account information.

9. That combination is uniquely dangerous. A Social Security number, paired with a client's name, phone number, and wireless carrier, and with a record of how and when the client receives Vanguard's text-message verification codes, is what a criminal needs to impersonate the client to Vanguard or to the client's carrier, to hijack the client's phone number, to intercept the codes that guard the client's account, and to send convincing messages that appear to come from Vanguard. The victims of the Data Breach face not only the familiar risks of identity theft, but also the risk that the savings held in their Vanguard accounts will be stolen.

10. The Data Breach was neither novel nor unforeseeable. Vanguard holds the identity and account data of tens of millions of investors, including Plaintiffs, which makes it an obvious target. In January 2026, a different threat actor publicly claimed to have obtained a dataset of 22.5 million records of Vanguard's U.S. clients, including names, dates of birth, addresses, emails, and phone numbers.[10] In February 2026, Vanguard reported to Massachusetts regulators a separate incident involving Social Security numbers.[11] And federal cybersecurity authorities have warned for years that text-message codes are unencrypted, are not resistant to phishing, and should not be used as a second factor for authentication.[12] Upon information and belief, Vanguard nevertheless

[10] Hackmanac (@H4ckmanac), X (Jan. 8, 2026, 6:26 AM), https://x.com/H4ckmanac/status/2009149769952972976.
[11] Mass. Off. of Consumer Affs. & Bus. Regul., *2026 Data Breach Notification Report* (Breach No. 2026-203, reported Feb. 11, 2026), https://www.mass.gov/doc/data-breach-report-2026/download; *see also Data Breach Notification Letters February 2026*, MASS.GOV, https://www.mass.gov/lists/data-breach-notification-letters-february-2026 (last visited Nov. 10, 2026) (notice letter No. 2026-203, The Vanguard Group, Inc.).
[12] Cybersecurity & Infrastructure Sec. Agency, *Mobile Communications Best Practice Guidance* (Dec. 2024), https://www.cisa.gov/sites/default/files/2024-12/joint-guidance-mobile-communications-best-practices_v2.pdf; *see also* Cybersecurity & Infrastructure Sec. Agency, *Mobile Communications Best Practice Guidance* (updated Dec. 2025), https://www.cisa.gov/sites/default/files/2025-12/guidance-mobile-communications-best-practices_508c.pdf ("CISA Mobile Guidance").

continued to rely on, log, and retain text-message verification codes, and failed to implement the safeguards necessary to keep its clients' Private Information out of criminal hands.

11. Vanguard states that it may store information entered into an online account application even if the applicant never submits it, and that it may keep records of its text-message communications with clients.[13]

12. Vanguard's response has compounded the harm. As of the filing of this Complaint, Vanguard has failed to issue any public statement acknowledging or explaining the Data Breach. Vanguard has not disclosed to each and every affected individual when the Data Breach began or ended, how the attacker gained access, what data was taken, or how many people were affected. Federal rules governing broker-dealers, investment companies, and investment advisers require that affected customers be notified as soon as practicable, and no later than 30 days after the institution becomes aware of the incident.[14] Every day that Vanguard remains silent is a day its clients do not know that they should freeze their credit, secure their wireless accounts, change their authentication settings, scrutinize their account activity, and treat any message claiming to come from Vanguard with suspicion.

13. Plaintiffs bring this action on behalf of themselves and all similarly situated individuals to recover damages for the harm Vanguard has caused, to obtain restitution of the benefits Vanguard unjustly retained by failing to fund reasonable security, and to obtain injunctive

---

[13] *Vanguard Online Privacy Notice*, VANGUARD, https://investor.vanguard.com/investing/privacy-policy (last visited Nov. 10, 2026) ("Online Privacy Notice"); *Vanguard Institutional Portal privacy policy*, VANGUARD, https://globalsecure.vanguard.com/public/privacy-policy.html (last visited Nov. 10, 2026) ("Institutional Privacy Policy").

[14] 17 C.F.R. § 248.30; Regulation S-P: Privacy of Consumer Financial Information and Safeguarding Customer Information (adopted May 16, 2024); *see also Reg S-P Compliance Deadlines Have Passed. Is Your Firm Exam-Ready?*, TROUTMAN PEPPER LOCKE (Sept. 2026), https://www.troutmanprivacy.com/2026/09/reg-s-p-compliance-deadlines-have-passed-is-your-firm-exam-ready/ ("Reg S-P").

and declaratory relief requiring Vanguard to secure the Private Information it continues to hold and to provide complete and accurate notice of the Data Breach.

## PARTIES

### A. Plaintiffs

14. Plaintiff James Kahn is an adult citizen and resident of Skokie, Illinois, where Plaintiff Kahn intends to remain. Plaintiff Kahn is a former Vanguard client who held investment accounts with Vanguard for at least two decades until 2024. As a condition of opening and maintaining the accounts, Plaintiff Kahn was required to provide Private Information, including his Social Security number and other personally identifying information, which Vanguard collected and maintained in its systems.

15. Plaintiff Rick Welsh is an adult citizen and resident of Philadelphia, Pennsylvania, where Plaintiff Welsh intends to remain. Plaintiff Welsh is a current Vanguard client who has had accounts held by Vanguard since at least 2009, including investment accounts. As a condition of opening and maintaining the accounts, Plaintiff Welsh was required to provide Private Information, including his Social Security number and other personally identifying information, which Vanguard collected and maintained in its systems.

### B. Defendant

16. Defendant The Vanguard Group, Inc. is a Pennsylvania corporation with its principal place of business at 100 Vanguard Boulevard, Malvern, Pennsylvania 19355.

17. Vanguard offers investments, advice, and retirement services to individual investors directly, through workplace retirement plans, and through financial intermediaries.[15] Vanguard provides participant recordkeeping, plan administrative, and related services for

---

[15] *Management team*, *supra* note 2.

employer-sponsored retirement plans, and it operates the personal investor website investor.vanguard.com and a mobile application through which its clients access their accounts.[16]

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because (a) the proposed Class includes more than 100 members; (b) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (c) at least one member of the proposed Class is a citizen of a State different from Defendant. Vanguard is a citizen of Pennsylvania, the Commonwealth in which it is incorporated and has its principal place of business. 28 U.S.C. § 1332(c)(1). Plaintiff Kahn is a citizen of Illinois, and Vanguard's own regulatory filings confirm that the Class includes residents of Vermont, California, Massachusetts, and South Carolina among other States.

19. This Court has general personal jurisdiction over Vanguard because Vanguard is incorporated in Pennsylvania and maintains its principal place of business in this District. Upon information and belief, Vanguard also directed the conduct at issue from this District, including its data security, authentication, data retention, and vendor management policies, and its incident response and breach notification decisions.

20. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Vanguard resides in this District, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. Vanguard's Business Depends on the Sensitive Data of Tens of Millions of

---

[16] Participant Privacy Policy, *supra* note 2; Online Privacy Notice, *supra* note 12.

**Investors**

21. Vanguard describes itself as trusted by more than 50 million investors to help them achieve goals like "a secure retirement, a college education, or a new home."[17] It manages approximately $12 trillion in assets.[18]

22. By design, Vanguard's business requires it to collect and store highly sensitive Private Information. Vanguard's privacy notice explains that the personal information it collects and shares can include Social Security numbers, income, transaction or loss history, account transactions, assets, and investment experience.[19] Individuals provide Private Information when they complete an account application, request information or materials, interact with Vanguard, or transact in their accounts, and Vanguard may store Private Information entered into an online application even if the application is never completed or submitted.[20]

23. Vanguard also keeps records of its communications with clients. Vanguard states that if individuals communicate with it by telephone, email, online chat, or text message, Vanguard may keep a record of that communication.[21] Upon information and belief, Vanguard, directly or through service providers, generates, transmits, logs, and retains records of the one-time verification codes it sends to clients by text message, together with the phone number, country, and mobile carrier associated with each message.

24. Vanguard profits from this arrangement. Upon information and belief, Vanguard earns substantial revenue from the fees and expenses associated with the funds it manages and the

[17] *Get the facts*, *supra* note 1.
[18] *What makes Vanguard different?*, *supra* note 1.
[19] Privacy Notice, *supra* note 3.
[20] Online Privacy Notice, *supra* note 12.
[21] Institutional Privacy Policy, *supra* note 12.

brokerage, advisory, and recordkeeping services it provides—services Vanguard cannot provide without collecting, using, and retaining its clients' Private Information.

25. Many of the individuals whose Private Information fills Vanguard's databases did not choose Vanguard. Retirement plan participants hold Vanguard accounts because their employers selected Vanguard as the plan's recordkeeper. They cannot opt out, negotiate the terms on which Vanguard holds their Private Information, or evaluate Vanguard's security practices. Vanguard's direct clients are no better positioned: none can inspect Vanguard's systems, and all are required to provide their Social Security numbers to open an account. Every one of them is entirely dependent on Vanguard to protect their Private Information.

### A. Vanguard Promised to Protect the Private Information It Collected

26. Vanguard expressly promised to safeguard its clients' Private Information. Its privacy notice states: "To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings."[22]

27. Vanguard's other privacy policies likewise represent that Vanguard restricts access to personal information to those employees who need to know it to perform their jobs, and that it maintains physical, electronic, and procedural safeguards to protect that information.[23]

28. Vanguard also represents that it retains personal data only "for as long as necessary" to provide its services, to fulfill the purposes described in its policies or its business purposes, or as required by law, regulation, or internal policy.[24] Vanguard is believed to have retained Private

[22] Privacy Notice, *supra* note 3.
[23] Participant Privacy Policy, *supra* note 2; *Our commitment to you*, VANGUARD, https://personal1.vanguard.com/pdf/bprv.pdf (last visited Nov. 10, 2026).
[24] Institutional Privacy Policy, *supra* note 12.

Information, including the information of former clients and former plan participants, and logs of expired authentication codes.

29. Vanguard understood its legal obligations. Vanguard acknowledges that federal law requires it to tell clients how it collects, shares, and protects their personal information.[25] As a financial institution, Vanguard is subject to the Gramm-Leach-Bliley Act, which declares that each financial institution has an obligation to respect the privacy of its customers and to protect the security and confidentiality of their nonpublic personal information.[26] Upon information and belief, Vanguard and the affiliated entities through which it does business are broker-dealers, investment companies, investment advisers, or transfer agents subject to the SEC's Regulation S-P, which requires covered institutions to maintain written policies and procedures reasonably designed to safeguard customer information, to maintain an incident response program, to oversee their service providers, and to notify affected individuals of a breach.[27]

30. Vanguard knew that its clients and plan participants relied on Vanguard to keep their Private Information secure.

**B. The Data Breach**

31. On or about October 16, 2026, threat intelligence firm ThreatMon reported a post on an underground forum alleging the theft of a database associated with investor.vanguard.com. The listing, titled "Database investor.vanguard.com +14M," claimed to contain more than 14 million records.[28]

32. The sample data posted with the listing appeared to be logs of text-message verification codes Vanguard sent to its clients. The samples were organized in a structured format

[25] Privacy Notice, *supra* note 3.
[26] 15 U.S.C. § 6801(b).
[27] Reg S-P, *supra* note 13.
[28] ThreatMon Post, *supra* note 7.

containing timestamps, phone numbers, country locations, mobile carrier names, and the specific one-time verification codes sent (for example, "Your verification code is 8702"). The sample timestamps range from June 2026 to August 2026, and the records span multiple countries.[29]

33. ThreatMon observed that, if authentic, the exposure of these logs could facilitate targeted phishing or social engineering attacks against Vanguard clients, and could compromise account security if combined with other stolen credentials.[30]

34. On or about November 4, 2026, a breach notice from Vanguard appeared on the Vermont Attorney General's public register of security breach notices. The filing identifies 94 affected Vermont residents and lists Social Security numbers as the information compromised.[31] The filing provides insufficient technical details about the underlying security failure and does not disclose the date on which the incident occurred or the date on which Vanguard discovered it.[32] Vanguard has since notified several other state attorneys general about citizens impacted by the Data Breach including: California, Massachusetts, and South Carolina.[33]

35. Upon information and belief, the incident Vanguard reported to the Vermont, Massachusetts, California, and South Carolina Attorneys General and the Vanguard client data advertised in October 2026 arise from the same or related compromises of Vanguard's systems, or from the same deficient security practices. In either event, Plaintiffs' and Class members' Private Information was accessed and acquired by unauthorized persons as a direct result of Vanguard's failures.

---

[29] *Id.*
[30] *Id.*
[31] Beinsure, *supra* note 5.
[32] Beinsure, *supra* note 5; *Vanguard Group Data Breach*, *supra* note 5.
[33] *See e.g* https://consumer.sc.gov/identity-theft-unit/security-breach-notices; https://oag.ca.gov/system/files/ELN-28726%20Vanguard%20Group%20Ad%20CM%203y%20L2%20r7prf.pdf; https://www.mass.gov/doc/2026-1988-vanguard-group-inc/download.

36. Upon information and belief, the unauthorized actor did not merely view Vanguard's data but acquired and exfiltrated it. Data offered for sale on a criminal forum has, by definition, left Vanguard's control. Upon information and belief, the Private Information was maintained in unencrypted or otherwise usable form, or the means to render it usable was also compromised.

37. Upon information and belief, cybercriminals who steal Social Security numbers, phone numbers, and account and authentication data do so to sell or use them, and such information remains valuable for fraud and identity theft for years.

38. The scale of the Data Breach is likely staggering. Vanguard's Vermont, South Carolina, California, and Massachusetts filings captures only the residents of a handful of states. Vanguard serves more than 50 million investors, and the database advertised in October 2026 reportedly contains more than 14 million records.[34] The true number of victims is likely far higher than Vanguard has disclosed.

**C. Vanguard's Notice Has Been Unreasonably Delayed and Incomplete**

39. Vanguard has not promptly warned anyone. Although Vanguard client data was publicly advertised for sale on or about October 16, 2026, and the sample records date back to June 2026, Vanguard has issued no public statement about the Data Breach.

40. Vanguard's filing with the Vermont Attorney General came on or about November 4, 2026—19 days after the forum listing was publicly reported.

41. Regulation S-P requires covered institutions to notify affected individuals as soon as practicable, and no later than 30 days after becoming aware that sensitive customer information was, or is reasonably likely to have been, accessed or used without authorization; the notice must

[34] *Get the facts*, *supra* note 1; ThreatMon Post, *supra* note 7.

describe the incident, the data involved, and the steps affected individuals can take to protect themselves.[35] Larger covered institutions were required to comply with these requirements by December 3, 2025.[36] Upon information and belief, Vanguard became aware—or, had it maintained reasonable monitoring, would have become aware—of the unauthorized access well before November 2026, given that the advertised records date to June through August 2026, and Vanguard's own form notice letters state that the Data Breach occurred between July 29-31, 2026: three months before Vanguard notified any state attorneys general.

42. Vanguard's silence is especially harmful here. Because the stolen data includes the content and format of Vanguard's own verification messages, criminals can send texts and make calls that look and sound exactly like Vanguard. Without clear notice from Vanguard, Plaintiffs and Class members cannot know whether a message that appears to come from Vanguard is genuine, which is precisely the uncertainty a criminal armed with the stolen data will exploit.

**D. The Data Breach Was Foreseeable**

43. Vanguard knew, or should have known, that it was an attractive target. A single financial institution that aggregates the identity, contact, authentication, and account information of tens of millions of investors is a concentration point of risk: one successful intrusion yields the means to target millions of people and their savings at once.

44. Vanguard also had specific warnings. On or about January 8, 2026, a threat actor publicly claimed to have obtained a dataset containing 22.5 million records of Vanguard's U.S. ETF and asset management clients, allegedly including names, dates of birth, addresses, emails,

---

[35] Reg S-P, *supra* note 13.
[36] *Id.*

and phone numbers.[37] Whether or not that claim was accurate, it put Vanguard on notice that criminals were targeting its client data.

45. On or about February 11, 2026, Vanguard reported to the Massachusetts Office of Consumer Affairs and Business Regulation a separate data breach involving Social Security numbers.[38] Upon information and belief, Vanguard reported additional breaches to Massachusetts regulators in 2024 and 2025.[39]

46. Vanguard also knew the risks of relying on text messages to authenticate its clients. In December 2024, the Cybersecurity and Infrastructure Security Agency ("CISA") warned that SMS messages are not encrypted—so that a threat actor with access to a telecommunications provider's network can read them—that SMS-based multifactor authentication is not phishing-resistant, and that users should migrate away from SMS-based multifactor authentication in favor of phishing-resistant methods.[40] Upon information and belief, Vanguard nevertheless continued to rely on text-message verification codes to authenticate its clients, and continued to log and retain records of those codes.

47. Social Security numbers are among the most valuable data elements to criminals precisely because they are difficult or impossible to change. Vanguard knew that the theft of its clients' Social Security numbers, phone numbers, carrier information, and authentication records would expose its clients to identity theft, tax fraud, financial fraud, account takeover, and targeted phishing.

---

[37] Hackmanac, *supra* note 9.
[38] *2026 Data Breach Notification Report*, *supra* note 10.
[39] *See The Vanguard Group, Inc Data Breaches: History*, RECENTBREACHES, https://recentbreaches.com/company/the-vanguard-group-inc (last visited Nov. 10, 2026) (listing Massachusetts breach notices by Vanguard dated May 9, 2024, October 24, 2024, July 30, 2025, and February 11, 2026).
[40] CISA Mobile Guidance, *supra* note 11.

48. The risks are especially acute for Vanguard's clients. Many are retirees or are saving for retirement, and the accounts Vanguard holds for them often represent the bulk of their life savings. Upon information and belief, criminals specifically target such individuals with impersonation and account-takeover schemes because the potential rewards are so large and the losses so difficult to recover.

### E. Vanguard Failed to Follow Federal Requirements, FTC Guidance, and Industry-Standard Security Practices

49. Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, prohibits unfair practices in or affecting commerce. The Federal Trade Commission ("FTC") has long treated a company's failure to employ reasonable and appropriate measures to protect consumers' personal information as an unfair practice under Section 5.

50. The FTC's guidance for businesses directs companies to know what personal information they hold; to keep only what they need; to protect the information they keep, including through encryption; to properly dispose of information they no longer need; to monitor their networks for unusual activity and large outbound data transfers; to verify that their service providers implement reasonable security measures; and to have a plan for responding to security incidents.[41]

51. Federal financial privacy law imposes additional obligations on institutions like Vanguard. Regulation S-P requires covered institutions to adopt written policies and procedures that address administrative, technical, and physical safeguards for the protection of customer information.[42] As amended in 2024, Regulation S-P also requires covered institutions to maintain

---

[41] Fed. Trade Comm'n, *Protecting Personal Information: A Guide for Business* (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf; Fed. Trade Comm'n, *Start with Security: A Guide for Business* (Aug. 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/920a_start_with_security_en_aug2023_508_final_0.pdf.
[42] Reg S-P, *supra* note 13.

an incident response program reasonably designed to detect, respond to, and recover from unauthorized access to or use of customer information; to oversee their service providers; and to notify affected individuals within the time described above.[43]

52. Industry frameworks, including the NIST Cybersecurity Framework 2.0, likewise call on organizations to maintain asset and software inventories, manage supply-chain and third-party risk, identify and remediate vulnerabilities, enforce least-privilege access, protect data at rest and in transit, continuously monitor for adverse events, and respond to and communicate about incidents promptly.[44] And CISA has called on organizations and individuals to adopt phishing-resistant authentication in place of SMS codes.[45]

53. Upon information and belief, Vanguard failed to meet these standards. Among other things, Vanguard:

a. failed to adequately train employees to recognize and resist social engineering;

b. failed to require phishing-resistant authentication and access controls for employee access to cloud applications containing Private Information;

c. failed to implement phishing-resistant authentication for client accounts and continued to rely on text-message verification codes that federal authorities warn are unencrypted and not phishing-resistant;

d. failed to limit its collection and retention of text-message verification logs, phone numbers, and carrier information, and failed to purge those records once the codes they contained had expired;

e. failed to segment its systems so that a compromise of its web-facing, messaging, or

[43] *Id.*
[44] Nat'l Inst. of Standards & Tech., *The NIST Cybersecurity Framework (CSF) 2.0* (Feb. 26, 2024), https://nvlpubs.nist.gov/nistpubs/CSWP/NIST.CSWP.29.pdf ("NIST CSF 2.0").
[45] CISA Mobile Guidance, *supra* note 11.

authentication systems could not reach repositories containing Social Security numbers and other Private Information;

f. failed to enforce least-privilege access controls for the systems, service accounts, and service providers with access to Private Information;

g. failed to encrypt, tokenize, or otherwise render unusable Social Security numbers and other sensitive data elements at rest;

h. failed to minimize the data it collected and to purge the Private Information of former clients, former plan participants, and individuals who never completed an account application once that information was no longer needed;

i. failed to deploy monitoring capable of detecting and stopping unauthorized access and the movement of large volumes of data out of its environment;

j. failed to adequately assess and monitor the security of its service providers, including any vendors that transmit, log, or store client communications or authentication data;

k. failed to respond reasonably to public warning signs, including the January 2026 claim that its client data had been stolen and the incident it reported to Massachusetts regulators in February 2026; and

l. failed to maintain and execute an incident response program that provided timely, complete notice to affected individuals.

54. Vanguard's failure to employ reasonable and appropriate data security measures constitutes an unfair practice prohibited by Section 5 of the FTC Act and falls short of the standards that the Gramm-Leach-Bliley Act and Regulation S-P establish for financial institutions.

## F. The Data Breach Has Caused, and Will Continue to Cause, Serious Harm

55. The Private Information stolen in the Data Breach is a ready-made toolkit for identity theft and fraud. Social Security numbers are the primary identifiers used to open financial accounts, obtain credit, file tax returns, claim government benefits, and obtain employment. Unlike a credit card number, a Social Security number cannot simply be cancelled and reissued.

56. The stolen data also enables account takeover. A criminal who holds a victim's name, Social Security number, phone number, and carrier can impersonate the victim to the carrier to transfer the victim's phone number to a device the criminal controls, then use Vanguard's own text-message verification process to reset the victim's credentials and gain access to the victim's account. Because Vanguard accounts often hold retirement savings, the losses from a single successful takeover can be devastating and difficult to reverse.

57. The stolen data enables highly convincing targeted phishing. Criminals now know that the victims are Vanguard clients, how to reach them, which carrier they use, and exactly what Vanguard's verification messages look like. They can send texts that replicate Vanguard's messages and solicit codes, passwords, or transfers. CISA specifically cautions users to remain suspicious of unexpected security alert messages, especially those requesting one-time codes.[46]

58. Social Security numbers held by an investment firm also expose victims to tax fraud. A criminal who holds a victim's Social Security number can file a fraudulent tax return and claim a refund in the victim's name, leaving the victim to discover the fraud only when the victim's legitimate return is rejected.

---

[46] *Id.*

59. These risks are long-lasting. According to the U.S. Government Accountability Office, stolen data may be held for a year or more before it is used to commit identity theft, and once stolen data has been sold or posted online, its fraudulent use may continue for years.[47]

60. As a result of the Data Breach, Plaintiffs and Class members have suffered and will continue to suffer injuries including:

a. the unauthorized disclosure, theft, and loss of control of their Private Information;

b. a substantial and imminent risk of identity theft, tax fraud, financial fraud, and account takeover;

c. lost time and productivity spent reviewing account and financial statements, monitoring credit, placing and maintaining credit freezes, securing wireless accounts, changing passwords and authentication settings, and responding to phishing attempts;

d. out-of-pocket costs for credit monitoring, identity theft protection, credit freezes, and related services;

e. the diminished value of their Private Information, for which a well-established legitimate and illicit market exists;

f. the loss of the benefit of their bargain with Vanguard, which included reasonable data security;

g. anxiety, emotional distress, and loss of privacy; and

h. the continued risk to their Private Information, which remains in Vanguard's possession and subject to further compromise so long as Vanguard fails to adopt

---

[47] U.S. Gov't Accountability Off., GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 4, 2007), https://www.gao.gov/products/gao-07-737.

adequate security measures.

61. Any credit monitoring Vanguard offers is inadequate. The risks created by the Data Breach will last for years. Credit monitoring detects some fraud only after it has occurred, and it does nothing to prevent account takeover of an existing brokerage or retirement account, phone-number hijacking, or phishing. Plaintiffs and Class members must now take on the burden of monitoring their credit, their tax filings, their wireless accounts, and their Vanguard accounts for the rest of their lives.

### G. The Experience of Plaintiff James Kahn

62. In or about early November 2026, Plaintiff Kahn learned that Vanguard experienced a Data Breach.

63. Plaintiff Kahn believes, based on the information Plaintiff Kahn provided to Vanguard, that Plaintiff Kahn's full name, address, phone number, email address, Social Security number, and account information were among the information exposed.

64. Plaintiff Kahn is careful with his Private Information. Plaintiff Kahn does not knowingly share his Social Security number or other identifiers with untrusted parties, and stores documents containing that information securely.

65. Since learning of the Data Breach, Plaintiff Kahn has spent at least several hours taking actions to mitigate harm as a result of the Data Breach, including time Plaintiff Kahn spent investigating the Data Breach, heightening the monitoring of his accounts for fraudulent activity, and fielding a significantly increased volume of spam and phishing communications. Plaintiff Kahn will need to continue these efforts for years to come.

66. Since learning of the Data Breach, Plaintiff Kahn has suffered significant anxiety, stress, and annoyance. Plaintiff Kahn worries that criminals now hold his Social Security number

and the information needed to impersonate him to Vanguard and to his wireless carrier. Unlike a password or credit card number, a Social Security number cannot simply be changed, and Plaintiff Kahn fears it will be used to open accounts, take out loans, file fraudulent tax returns, access a Vanguard account in his name, or commit other fraud in his name for years to come.

67. Plaintiff Kahn has a continuing interest in ensuring that his Private Information, which upon information and belief remains in Vanguard's possession, is protected from further compromise.

**H. The Experience of Plaintiff Rick Welsh**

68. In or about early November 2026, Plaintiff Welsh learned that Vanguard experienced a Data Breach.

69. Plaintiff Welsh believes, based on the information Plaintiff Welsh provided to Vanguard, that Plaintiff Welsh's full name, address, phone number, email address, Social Security number, and financial account information were among the information exposed.

70. Plaintiff Welsh is careful with his Private Information. Plaintiff Welsh does not knowingly share his Social Security number or other identifiers with untrusted parties, and stores documents containing that information securely.

71. Since learning of the Data Breach, Plaintiff Welsh has spent at least several hours taking actions to mitigate harm as a result of the Data Breach—time Plaintiff Welsh otherwise would have spent working, caring for family, or on other activities—including time Plaintiff Welsh spent investigating the Data Breach, monitoring his accounts for fraudulent activity, and fielding an increased volume of spam and phishing communications. Plaintiff Welsh will need to continue these efforts for years to come.

72. Since learning of the Data Breach, Plaintiff Welsh has suffered significant anxiety, stress, and fear. Plaintiff Welsh's Vanguard account holds his life savings: money he spent years setting aside and is counting on for his future financial security. Plaintiff Welsh worries that criminals now hold his Social Security number and the information needed to impersonate him to Vanguard and to his wireless carrier. With that combination, a criminal could take over Plaintiff Welsh's phone number, intercept the verification codes meant to protect the account, and empty it.

73. The threat to Plaintiff Welsh's Vanguard account is far more serious than the threat posed by a stolen credit card number. A fraudulent credit card charge may be disputed and reversed upon discovery, and federal law caps a cardholder's liability. Savings and investment accounts do not carry that same protection. If Plaintiff Welsh's account is drained, he may have no guarantee of getting the money back, and even a partial recovery could not restore the years of investment growth lost in the meantime. And unlike a password or credit card number, a Social Security number cannot simply be changed. Plaintiff Welsh fears it will be used to access his Vanguard account, open accounts, take out loans, file fraudulent tax returns, or commit other fraud in his name for years to come. That puts at risk the future Plaintiff Welsh has worked to build.

74. Plaintiff Welsh has a continuing interest in ensuring that his Private Information, which upon information and belief remains in Vanguard's possession, is protected from further compromise.

## CLASS ACTION ALLEGATIONS

75. Plaintiffs bring this action on behalf of themselves and all others similarly situated under Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and 23(c)(4), on behalf of the following Class:

> **Nationwide Class:** All individuals residing in the United States whose Private Information was accessed, acquired, or exfiltrated in the Data Breach, including all individuals to whom Vanguard, directly or through an agent, sent notice of the Data Breach (the "Class").

76. Excluded from the Class are Vanguard; its parents, subsidiaries, affiliates, officers, employees, and directors; any entity in which Vanguard has a controlling interest; all individuals who timely and validly request exclusion; and the judicial officers to whom this action is assigned and their immediate families and staff.

77. Plaintiffs reserve the right to modify the Class definition, or to propose subclasses, as discovery and further investigation warrant.

78. <u>Numerosity.</u> The members of the Class are so numerous that joinder is impracticable. Vanguard's filing with the Vermont Attorney General alone identifies 94 affected individuals in that single State, with the Massachusetts Attorney General identifies 1,224 Massachusetts residents, with the South Carolina Attorney General identifies 1,656 South Carolina residents, and the database advertised in October 2026 reportedly contains more than 14 million records.[48] Class members can be identified from Vanguard's records, including the records it used or will use to send notice.

79. <u>Commonality and Predominance.</u> Common questions of law and fact exist and predominate over any questions affecting only individual Class members, including:

a. whether Vanguard owed Plaintiffs and Class members a duty to implement and maintain reasonable security procedures and practices to protect their Private Information;

b. whether Vanguard breached that duty;

[48] Beinsure, *supra* note 5; ThreatMon Post, *supra* note 7.

c. whether Vanguard's data security practices complied with the FTC Act, the Gramm-Leach-Bliley Act, Regulation S-P, applicable industry standards, and its own privacy notices;

d. whether Vanguard knew or should have known of the risks and warning signs described above and failed to remediate them;

e. whether Vanguard's reliance on, and logging and retention of, text-message verification codes was unreasonable;

f. whether Vanguard unreasonably retained the Private Information of former clients, former plan participants, and incomplete applicants;

g. whether Vanguard unreasonably delayed notifying, or failed to notify, Plaintiffs and Class members of the Data Breach;

h. whether Vanguard's privacy notices formed part of its contracts with Plaintiffs and Class members, and whether Vanguard breached those contracts;

i. whether Vanguard entered into and breached implied contracts with Plaintiffs and Class members;

j. whether Vanguard was unjustly enriched;

k. whether Plaintiffs and Class members are entitled to damages, restitution, and the measure of such relief; and

l. whether Plaintiffs and Class members are entitled to declaratory and injunctive relief.

80. Typicality. Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and all Class members had their Private Information compromised in the same Data Breach as a result of the same course of conduct by Vanguard.

81. Adequacy. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have no interests antagonistic to those of the Class and have retained counsel experienced in complex class action and data breach litigation.

82. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by individual Class members are small relative to the burden and expense of individual litigation against a well-resourced defendant, making individual actions impracticable. Class treatment will conserve the resources of the parties and the Court and avoid inconsistent adjudications.

83. Injunctive and Declaratory Relief. Vanguard has acted or refused to act on grounds generally applicable to the Class, so that final injunctive and declaratory relief is appropriate with respect to the Class as a whole under Rule 23(b)(2).

84. Issue Certification. Alternatively, particular issues—including the existence and scope of Vanguard's duty, whether Vanguard breached that duty, and whether Vanguard's notice was unreasonably delayed—are appropriate for certification under Rule 23(c)(4).

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiffs and the Class)

85. Plaintiffs incorporate by reference all preceding factual allegations as if fully set forth herein.

86. Vanguard collected, received, stored, and maintained Plaintiffs' and Class members' Private Information in the course of its business and for its own profit.

87. By accepting and maintaining that Private Information, Vanguard owed Plaintiffs and Class members a duty to exercise reasonable care in safeguarding it from unauthorized access, acquisition, and disclosure. That duty included the obligations to design, implement, maintain,

monitor, and test reasonable security controls; to implement reasonable authentication methods; to manage the risks posed by its service providers; to retain Private Information no longer than necessary; to detect intrusions promptly; and to notify affected individuals promptly and accurately of a data breach.

88. Vanguard's duty arose from the foreseeable risk of harm created by its own conduct in aggregating vast quantities of highly sensitive identity, authentication, and account information about tens of millions of investors, and from the special relationship between Vanguard and Plaintiffs and Class members, who were required to entrust their information to Vanguard and had no ability to protect it themselves. Vanguard's duty extended to protecting Plaintiffs and Class members from the foreseeable criminal conduct of third parties. *See* Restatement (Second) of Torts § 302B.

89. Vanguard's duty was further informed by Section 5 of the FTC Act, the Gramm-Leach-Bliley Act, Regulation S-P, the FTC's data security guidance, CISA's authentication guidance, and the industry standards described above.

90. Vanguard breached its duty of care through the acts and omissions described above, including by relying on, logging, and retaining text-message verification codes; failing to segment and encrypt the most sensitive data; failing to purge the data of former clients and plan participants; failing to respond to known warning signs; failing to detect and stop the unauthorized access and exfiltration; failing to adequately train employees to recognize and resist social engineering; failing to require phishing-resistant authentication and access controls for employee access to cloud applications containing Private Information; and failing to provide timely and complete notice of the Data Breach.

91. It was reasonably foreseeable to Vanguard that its failure to exercise reasonable care would result in the unauthorized access to and theft of Plaintiffs' and Class members' Private Information and the resulting harms.

92. But for Vanguard's breach of its duties, Plaintiffs' and Class members' Private Information would not have been compromised. Vanguard's delay in providing notice also deprived Plaintiffs and Class members of the opportunity to take timely steps to mitigate their injuries.

93. As a direct and proximate result of Vanguard's negligence, Plaintiffs and Class members have suffered and will continue to suffer the injuries described above, and are entitled to compensatory, consequential, and nominal damages in an amount to be proven at trial.

**COUNT II**
**BREACH OF CONTRACT**
**(On Behalf of Plaintiffs and the Class)**

94. Plaintiffs incorporate by reference all preceding factual allegations as if fully set forth herein.

95. Upon information and belief, Plaintiffs and Class members entered into written agreements with Vanguard governing their accounts, and those agreements incorporate or are accompanied by Vanguard's privacy notices, which Vanguard acknowledges federal law requires it to provide.

96. In those agreements and privacy notices, Vanguard promised that, to protect clients' personal information from unauthorized access and use, it uses security measures that comply with federal law, including computer safeguards and secured files; that it restricts access to personal

information to employees who need to know it; and that it retains personal data only as long as necessary.[49]

97. In the alternative, as to Class members who hold Vanguard accounts through employer-sponsored retirement plans, upon information and belief, Vanguard's recordkeeping and services agreements with plan sponsors contain promises to safeguard participant data that were made for the direct and intended benefit of the participants whose Private Information is the subject of those promises. Recognition of those participants' right to performance is appropriate to effectuate the intention of the contracting parties.

98. Plaintiffs and Class members performed their obligations under these agreements, including by providing accurate Private Information and paying the fees and expenses associated with their accounts.

99. Vanguard breached these agreements by failing to maintain security measures that comply with federal law, including the Gramm-Leach-Bliley Act and Regulation S-P; by failing to maintain reasonable computer safeguards; by retaining Private Information longer than necessary; and by failing to provide timely notice of the Data Breach.

100. As a direct and proximate result of Vanguard's breaches, Plaintiffs and Class members have suffered the injuries described above, including the loss of the benefit of their bargain, and are entitled to damages in an amount to be proven at trial.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(Pleaded in the Alternative to Count II, on Behalf of Plaintiffs and the Class)**

101. Plaintiffs incorporate by reference all preceding factual allegations as if fully set forth herein.

---

[49] Privacy Notice, *supra* note 3; Participant Privacy Policy, *supra* note 2; Institutional Privacy Policy, *supra* note 12.

102. This Count is pleaded in the alternative to Count II.

103. Plaintiffs and Class members provided their Private Information to Vanguard, directly or through their employers' retirement plans, for the purpose of receiving investment, brokerage, advisory, and retirement services. Vanguard accepted and used that Private Information to provide its services and generate revenue.

104. Through this conduct, Vanguard entered into implied contracts with Plaintiffs and Class members under which Vanguard agreed to take reasonable measures to safeguard their Private Information, to retain it no longer than necessary, and to provide timely notice of any data breach. Plaintiffs and Class members would not have entrusted their Private Information to Vanguard absent such an understanding.

105. Plaintiffs and Class members performed their obligations by providing accurate Private Information. Vanguard breached the implied contracts by failing to safeguard that information and by failing to provide timely notice of the Data Breach.

106. As a direct and proximate result of Vanguard's breaches, Plaintiffs and Class members have suffered the injuries described above and are entitled to damages in an amount to be proven at trial.

**COUNT IV**
**UNJUST ENRICHMENT**
**(Pleaded in the Alternative to Counts II and III, on Behalf of Plaintiffs and the Class)**

107. Plaintiffs incorporate by reference all preceding factual allegations as if fully set forth herein.

108. This Count is pleaded in the alternative to Counts II and III, to the extent there is no enforceable contract governing the subject matter of this dispute.

109. Plaintiffs and Class members conferred a benefit on Vanguard in the form of their Private Information and the fees and expenses associated with their accounts, without which

Vanguard could not provide the services from which it earns revenue. Vanguard knew of and appreciated that benefit, and a portion of the fees Vanguard received was intended to fund the reasonable protection of that information.

110. Vanguard enriched itself by saving the costs it should have spent on reasonable data security measures, including phishing-resistant authentication, network segmentation, encryption, data minimization, service provider oversight, and monitoring, while continuing to collect revenue derived from Plaintiffs' and Class members' accounts and Private Information.

111. Under the circumstances, it would be unjust and inequitable for Vanguard to retain the benefits it received at Plaintiffs' and Class members' expense. Plaintiffs and Class members lack an adequate remedy at law to the extent their contract claims fail.

112. Plaintiffs and Class members are entitled to restitution and disgorgement of the amounts by which Vanguard was unjustly enriched, in an amount to be proven at trial.

**COUNT V**
**DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**
**28 U.S.C. §§ 2201, et seq.**
**(On Behalf of Plaintiffs and the Class)**

113. Plaintiffs incorporate by reference all preceding factual allegations as if fully set forth herein.

114. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court may declare the rights and legal relations of the parties and grant further necessary or proper relief. The Court also has broad authority to enjoin conduct that violates the statutory and common-law duties described in this Complaint.

115. An actual controversy exists between the parties regarding Vanguard's present and ongoing duty to reasonably safeguard Plaintiffs' and Class members' Private Information and to notify them of the Data Breach, and whether Vanguard's current security measures and notice

satisfy that duty. Upon information and belief, Vanguard continues to hold Plaintiffs' and Class members' Private Information, continues to rely on text-message verification codes, and has not provided complete notice of the Data Breach.

116. Plaintiffs therefore seek a declaration that Vanguard owes, and continues to owe, a legal duty to secure the Private Information in its possession and to timely notify affected individuals of any breach, and that Vanguard's existing security measures and notice do not comply with that duty.

117. Plaintiffs further seek corresponding injunctive relief requiring Vanguard, among other things, to:

a. provide prompt, complete, and accurate notice of the Data Breach to all affected individuals, identifying the data elements compromised for each individual;

b. engage independent third-party security auditors to conduct comprehensive assessments, including penetration testing, of its systems on a periodic basis, and to promptly remediate any deficiencies identified;

c. offer and promote phishing-resistant authentication for client accounts, and cease relying on text-message codes as the sole second factor for authentication and account recovery;

d. purge, in a reasonably secure manner, logs of text-message verification codes and the Private Information of former clients, former plan participants, and any information that is no longer necessary for an authorized purpose;

e. segment its systems and apply least-privilege access controls so that the compromise of one component cannot expose repositories of sensitive data;

f. encrypt or tokenize Social Security numbers and other sensitive identifiers at rest;

g. implement continuous monitoring designed to detect unauthorized access and abnormal outbound data transfers;

h. implement and maintain a program to assess and monitor the security of service providers with access to Private Information;

i. provide affected individuals with identity theft protection, credit and identity monitoring, account-takeover and fraud protection, and identity restoration services for a period commensurate with the lifelong risks created by the Data Breach; and

j. submit to periodic compliance reporting for a period to be determined by the Court.

118. If an injunction is not issued, Plaintiffs and Class members will suffer irreparable injury, for which they lack an adequate remedy at law, in the event of another breach of Vanguard's systems. The hardship to Plaintiffs and Class members absent an injunction outweighs the hardship to Vanguard of complying with it, and the public interest favors protecting the sensitive information and savings of the Nation's investors.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the proposed Class, respectfully request that the Court enter judgment in Plaintiffs' favor and against Vanguard as follows:

a. certifying the Class under Federal Rule of Civil Procedure 23, appointing Plaintiffs as Class representatives, and appointing Plaintiffs' counsel as Class counsel;

b. awarding compensatory, consequential, and nominal damages in an amount to be determined at trial;

c. awarding restitution and disgorgement;

d. entering the declaratory and injunctive relief requested herein;

e. awarding pre-judgment and post-judgment interest as permitted by law;

f. awarding reasonable attorneys' fees, costs, and expenses as permitted by law; and

g. granting such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all issues so triable.

Dated: November 18, 2026

Respectfully submitted,

*/s/ Mindee J. Reuben*

Mindee J. Reuben (PA Bar Id. 75308)
Carlynne A. Wagner (PA Bar Id. 331207)
**HAUSFELD LLP**
325 Chestnut St Unit 900,
Philadelphia, PA 19106
Tel.: (215) 985-3270
mreuben@hausfeld.com
cwagner@hausfeld.com

James J. Pizzirusso*
Nicholas Murphy*
Amanda V. Boltax*
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Tel.: (202) 540-7200
jpizzirusso@hausfeld.com
nmurphy@hausfeld.com
mboltax@hausfeld.com

Steven M. Nathan*
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel.: (646) 357-1100
snathan@hausfeld.com

*Attorneys for Plaintiffs and the Proposed Class*

**pro hac vice* application forthcoming